# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LIBERTAS TECHNOLOGIES,
L.L.C.,
              Plaintiff

    vs

CHERRYHILL MANAGEMENT,
INC., et al.,
              Defendants

Case No. 1:10-cv-935
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on defendants' joint motion to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b) (Doc. 24), plaintiff's opposing memorandum (Doc. 26), and defendants' reply memorandum in support of their motion to dismiss. (Doc. 27).

## I. Introduction

Plaintiff Libertas Technologies, L.L.C. (Libertas) brings this action for copyright infringement and various state law violations against its former employee, Todd Schwartz, and Cherryhill Management, Inc. (Cherryhill). Jurisdiction is premised on 28 U.S.C. § 1338, which grants the district courts original jurisdiction over copyright cases. The complaint does not assert a basis for the Court's jurisdiction over the state claims. However, those claims are necessarily brought pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) as, according to the allegations of the complaint, complete diversity is lacking. *See* 28 U.S.C. § 1332.

Plaintiff Libertas filed the original complaint in this action on December 27, 2010. (Doc. 1). Libertas was subsequently granted leave to amend the complaint to accurately reflect the registration of the copyright for the material at issue in this matter. (Doc. 18). Libertas filed an

amended complaint with a copy of the registration attached.  (Doc. 22; Exh. D).  The allegations

of the original and amended complaints are virtually identical, with the following exceptions:

- Plaintiff alleged in the original complaint that from January 2005, it developed various components of software for use in Cherryhill's business pursuant to an agreement with Cherryhill and ultimately developed "a management interface to integrate individual software components into an integrated unit" (the "Cherryhill Software").  (Doc. 1, ¶¶ 5, 6).  In the amended complaint, plaintiff has substituted the word "dashboard" for interface.  (Doc. 22, ¶ 6).

- Plaintiff has added an allegation to the complaint that the copyright for all software, including all written code, that was developed for the Cherryhill Software has been registered with the United States Copyright Office as number TXu 1-688-153, effective November 5, 2010.  (*Id.*, ¶ 7).

In the amended complaint, plaintiff presents the same claims raised in the original

complaint: copyright infringement under federal law (Count 1) and state law claims for tortious

interference with contract (Count 2); tortious interference with a business relationship (Counts 3,

4); misappropriation of trade secrets (Count 5); conversion (Count 6); replevin (Count 7); and

civil conspiracy (Count 8).  (*Id.*, ¶¶ 27-63).  As relief, Libertas seeks actual and compensatory

damages; punitive or treble damages; replevin of its property; and preliminary and permanent

injunctive relief.

Defendants move to dismiss plaintiff's federal copyright claim on the grounds the work is

not copyrightable, and plaintiff is barred from bringing an action against an owner of a copy of a

computer program who modifies or uses the program but does not sell it.  Further, defendants

contend that because plaintiff does not have a viable federal claim, the Court should decline to

exercise supplemental jurisdiction over the remaining state law claims and should dismiss those

claims without prejudice.  In the event the federal claim survives and the Court chooses to

exercise supplemental jurisdiction over the state law claims, defendants assert those claims must

be dismissed for failure to state a claim for relief.

## II. Rule 12(b)(6) standard

The standard for dismissal of a complaint under Rule 12(b)(6) is set forth in the Report and Recommendation issued in this matter on August 2, 2011. (Doc. 15). Plaintiff appears to question the applicability of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) to this matter by noting that neither is a copyright case. (Doc. 26 at 1). However, this is immaterial as *Twombly* established the pleading standard for all civil actions. *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 n.4 (6th Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1953). Accordingly, the Court must apply the *Twombly* pleading standard to the allegations of the amended complaint to determine whether the requirements of Rule 12(b)(6) are satisfied.

## III. The federal copyright infringement claim

Defendants Cherryhill and Schwartz move to dismiss plaintiff's federal copyright infringement claim on the grounds that: (1) the work in question is not, by its nature, eligible for copyright protection; and (2) defendants' conduct is not actionable because Cherryhill was within its rights to modify any computer program to suit its business needs under the authority of 17 U.S.C. § 117, the "utilization statute," which allows the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program if certain conditions are met.

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §

3

102(a). Works of authorship include literary works. 17 U.S.C. § 102(a)(1). The statutory definition of "literary works" may in turn include computer programs. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533 (6th Cir. 2004) (citing H.R. Rep. No. 1476 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5667 ("The term 'literary works'. . . includes . . . computer programs to the extent that they incorporate authorship in the programmer's expression of original ideas, as distinguished from the ideas themselves.") (case citations omitted).

The Copyright Act grants owners of protected works the exclusive right to reproduce copyrighted works, to create derivative works based on original works, to distribute copies of the works, and to perform or display the works publicly. 17 U.S.C. § 106. Subject to the requirements of 17 U.S.C. § 411, the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement of that right committed during ownership of the right. 17 U.S.C. § 501(b). Section 411(a) requires that no civil action for infringement of a copyright can be instituted until preregistration or registration of the copyright claim has been made in accordance with that title. 17 U.S.C. § 411(a).

A copyright infringement claim under § 411 has two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). *See also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)). The Sixth Circuit has explained that the first prong "tests the originality and non-functionality of the work, *see M.M. Bus. Forms Corp. v. Uarco, Inc.*, 472 F.2d 1137, 1139 (6th Cir. 1973), both of which are presumptively established by the copyright registration," while "[t]he second prong tests whether any copying occurred (a factual matter) and

4

whether the portions of the work copied were entitled to copyright protection (a legal matter)."

*Lexmark*, 387 F.3d at 534 (citing *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527,

534-35 & n.14 (5th Cir. 1994); M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.01[B]

(2003)).

Copyright protection for an original work of authorship does not extend to any "idea,

procedure, process, system, method of operation, concept, principle, or discovery, regardless of

the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. §

102(b). Copyright protection extends "only to the expression of the idea-not the idea itself."

*Lexmark*, 387 F.3d at 534 (citations omitted). This general principle applies equally to computer

programs. *Id.* (citations omitted). Courts have acknowledged that given the essentially

functional nature of a computer program, "the task of separating expression from idea in this

setting is a vexing one." *Id.* at 535 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d

693, 704 (2d Cir. 1992) ("The essentially utilitarian nature of a computer program further

complicates the task of distilling its idea from its expression."); *Sega Enters., Ltd. v. Accolade,

Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807,

819-20 (1st Cir. 1995) (Boudin, J., concurring) ("compared to aesthetic works, computer

programs hover even more closely to the elusive boundary line described in § 102(b)").

In ascertaining the "'elusive boundary line' between idea and expression, between

process and non-functional expression," courts have applied the merger doctrine. *Id.* The

merger doctrine holds that copyright protection is denied to expression that is inseparable from or

merged with the ideas, processes, or discoveries underlying the expression. *Id.* (citations

omitted). Idea and expression are said to have "merged" in two situations: first, where the

5

"expression is essential to the statement of the idea," *id.* (citing *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994); *Lotus Dev.*, 49 F.3d at 816 ("If specific words are essential to operating something, then they are part of a 'method of operation' and, as such, are unprotectable."); and second, where there is only one way or very few ways of expressing the idea. *Id.* (citing *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1519 n. 27 (11th Cir. 1997)). Copyright protection does not exist in these situations because "granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well." *Id.* (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 838 (10th Cir. 1993); *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 n.2 (6th Cir. 2004)).

Here, defendants do not challenge ownership of the copyright. Nor do they contest the first part of the second *Feist* prong - the factual issue of whether any copying occurred. *See Feist,* 499 U.S. at 361. Defendants do challenge plaintiff's claim to copyright protection under the second part of that prong - copying of constituent elements of the work that are original. Defendants acknowledge that software may be entitled to copyright protection (Doc. 24 at 6, citing *Lotus Dev. Corp.*, 49 F.3d at 813 n.5), but not if it fits within an exception under § 102(b) and constitutes an idea rather than the expression of an idea. (*Id.*, citing *Altai*, 975 F.3d at 839-40). Defendants assert that the computer program plaintiff seeks to protect is, in plaintiff's own words, "a management interface[1] to integrate individual software components into an integrated unit." (*Id.* at 8, citing Doc. 1, ¶ 6). Defendants allege, without citation to any authority, that such

---

[1]Plaintiffs substituted the term "dashboard" for "interface" in the amended complaint (Doc. 22, ¶ 6), and it is the allegations of the amended complaint that must be accepted as true for purposes of the motion to dismiss.

integration software "by its nature, is functional rather than creative" (*Id.*), and that a functional or factual work is not entitled to copyright protection as a matter of law.  (*Id.* at 7, citing *Sega Enters., Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1524 (9th Cir. 1992)).

Defendants further allege that the merger doctrine applies here so as to preclude copyright protection because any protectable expression in the computer program "was embodied inextricably in the line-by-line instructions of the computer program. . . ." (*Id.* at 7, citing *Atari Games Corp v. Nintendo of Am., Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992); *Atari Games Corp. v. Nintendo of Am., Inc.*, Nos. C 88-4805 FMS, C 89-0027 FMS, 1993 WL 207548, at *1 (N.D. Cal. May 18, 1993)).  Defendants also rely on *Lexmark*, 387 F.3d at 535, and the cases cited therein for the proposition that no copyright protection lies in the elements of a program that are dictated by practical realties, such as hardware standards and mechanical specifications; software standards and compatibility requirements; computer manufacturer design standards; target industry practices; and standard computer programming practices.  (*Id.* at 6-7).

In response to defendants' motion, plaintiff alleges that because it has submitted proof of registration of its copyright, the copyright is entitled to a presumption of validity and the question of whether the work is entitled to copyright protection must be decided on summary judgment. (Doc. 26 at 3).  Plaintiff also suggests it is not necessary to show copying in order to prevail on its copyright infringement claim.  Rather, plaintiff contends it need only show improper use of its work, which it has successfully asserted by alleging wrongful derivative use.  (*Id.*)  Plaintiff does not address defendants' other arguments in its opposing memorandum but relies on its arguments presented in opposition to defendants' first motion to dismiss.  *See* Doc. 12.

In reply, defendants allege that because plaintiff never published its work, the copyright is

not entitled to a presumption of validity under 17 U.S.C. § 410(c).[2]  (Doc. 27 at 3).  Rather, defendants contend it is within the Court's discretion what weight to give to the certificate of registration.

Plaintiff's copyright registration is entitled to a presumption of validity pursuant to 17 U.S.C. § 410(c).  Section 410(c) provides that in any judicial proceeding, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Based on the allegations of the amended complaint that plaintiff has never published the software program, which the Court must accept as true on a motion to dismiss, the certificate of registration was necessarily made before first publication of the work.  The presumption of validity afforded under § 410(c) therefore applies.

This does not mean that dismissal of plaintiff's infringement claim at the pleading stage is foreclosed.  Courts have in fact considered and dismissed copyright infringement cases on Rule 12(b)(6) motions.  *See Goettle v. Burgess*, No. 1:10cv187, 2010 WL 5156121, at * 2 (S.D. Ohio Dec. 14, 2010) (Dlott, J.) (acknowledging that courts have dismissed copyright infringement cases at the pleading stage pursuant to Rule 12(b)(6) motions) (citing *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-65 (2d Cir. 2010)).  It simply means that once a presumption of validity is established, the party challenging the copyright has the burden to rebut the presumption.  *See Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing *Gates Rubber Co.*, 9 F.3d at 831).

_____

[2]"Publication" of a work under the Copyright Act means "distributed to the public by sale or other transfer of ownership."  17 U.S.C. § 101.

8

Defendants have failed to carry their burden to successfully rebut the presumption of validity afforded plaintiff's copyright. A review of the amended complaint discloses that the specific nature of plaintiff's software is not ascertainable from the pleadings. Absent details about the computer program and further factual development of the record, the Court is unable to determine whether the software is functional as opposed to creative and whether any protectable expression in the program "was embodied inextricably in the line-by-line instructions of the computer program" so as to merge with the expression and preclude copyright protection. (*See* Doc. 24 at 7). Thus, under the scenario presented by this case, whether the work is entitled to copyright protection requires a fact-intensive inquiry into the nature of the work, which is a matter properly resolved at the summary judgment stage.[3] Accordingly, dismissal of the complaint is not warranted on the ground plaintiff's software is not entitled to copyright protection.

Nor is dismissal warranted under the utilization statute, 17 U.S.C. § 117. Section 117 provides:

> Notwithstanding the provisions of section 106, it is not an infringement for *the owner of a copy of a computer program* to make or authorize the making of another copy or adaptation of that computer program provided:
> (1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or
> (2) that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

---

[3]Plaintiff need not specifically set forth in the complaint the non-functional elements of the work in order to survive defendants' motion to dismiss. *See Goettle*, 2010 WL 5156121, at *4 (rejecting as unsupported by Sixth Circuit and Supreme Court law the contention that post-*Twombly* and *Iqbal,* the non-utilitarian aspects of a design for a useful article must be specifically identified in the complaint in order to state a claim for copyright infringement).

(emphasis added).  Defendants cite *Krause v. Titleserv, Inc.*, 402 F.3d 119 (2d Cir. 2005), and a number of other cases in support of their position that the utilization statute bars an infringement action against them.  (Doc. 24 at 8-9).  Defendants contend these decisions demonstrate it had the authority under § 117 to "modify any program to suit the needs of its business."  (*Id.* at 10).  However, the Second Circuit in *Krause,* 402 F.3d at 124, stated that "courts should inquire into whether the party exercises sufficient incidents of ownership over a copy of the program to be sensibly considered the owner of the copy for purposes of § 117(a)."  Here, plaintiff alleges facts that, accepted as true, indicate that defendants are not the owners of the software program that is the subject of this infringement action.  Defendants' "utilization" defense necessarily depends on a finding that Cherryhill is the "owner of a copy of a computer program," a factual determination that cannot be made on a motion to dismiss.  Thus, dismissal of plaintiff's copyright infringement action is not warranted on the ground the claim is barred by the utilization statute.

## IV.  Plaintiff's state law claims

Because dismissal of the federal copyright infringement claim is not warranted, the Court should exercise its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  Defendants have asserted a number of different grounds for dismissing those claims.

### A.  Counts 2, 5, 6 and 7

Defendants contend that plaintiff's claims for tortious interference with contract (Count 2), misappropriation of trade secrets (Count 5), and conversion (Count 6) must be dismissed as

preempted by federal copyright law.[4]  Defendants contend that although the registered work is
not entitled to copyright protection, it nonetheless falls within the preemptive reach of the
Copyright Act.  (Doc. 11 at 9-10).

Plaintiff counters that its claims are not preempted, although plaintiff cites no authority in
support of its position.  Plaintiff simply asserts there are allegations in the amended complaint
that go beyond copyright issues, specifically that defendant Schwartz, acting in concert with
defendant Cherryhill, destroyed property belonging to plaintiff by reformatting the hard drive on
a computer that he wrongfully took from plaintiff; that defendants "took the time that Plaintiff
paid the Defendant Schwartz to work, and the investment that Plaintiff made in the business
relationship with Cherryhill, and converted it to their own use"; and that defendants
misappropriated Non-Cherryhill Software that constitutes trade secrets of plaintiff.  (Doc. 12 at 9,
citing Doc. 1, Original Complaint, ¶¶ 13, 14, 17, 48).  Plaintiff further asserts that the alleged
tortious interference does not involve copyrighted material but concerns the taking of Libertas'
information in conjunction with the inducement of Schwartz away from his employment with
Libertas.  (Doc. 12 at 10, citing Doc. 1, ¶¶ 16-19, 23-24, 34).

Title 17 U.S.C. § 301 defines the preemptive scope of the Copyright Act:

On and after January 1, 1978, all legal or equitable rights that are equivalent to
any of the exclusive rights within the general scope of copyright as specified by
section 106 in works of authorship that are fixed in a tangible medium of
expression and come within the subject matter of copyright as specified by
sections 102 and 103, whether created before or after that date and whether
published or unpublished, are governed exclusively by this title.  Thereafter, no
person is entitled to any such right or equivalent right in any such work under the
common law or statutes of any State.

---

[4]The Court will also address whether plaintiff's claim for replevin (Count 7) is preempted as this claim is
closely related to plaintiff's claim for conversion.

11

The "subject matter of copyright" is broader than the scope of the Act's protections and includes all works of a type covered by §§ 102 and 103, even if they are not entitled to copyright protection. *Wrench LLC v. Taco Bell*, 256 F.3d 446, 455 (6th Cir. 2001) (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996)).

If a plaintiff's state law claims concern a work within the subject matter of the Copyright Act, the claims will be preempted only if they allege rights "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106," which includes the creation of derivative works. *Wrench*, 256 F.3d at 456 (citing 17 U.S.C. 301(a)). The Sixth Circuit in *Wrench* set forth the following test for determining equivalency:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Id.* (internal citation omitted).

Here, defendants allege that plaintiff's state law claims for tortious interference with contract, misappropriation of trade secrets, and conversion are "little more than federal copyright claims in state law clothing." (Doc. 11 at 10). Upon review of the allegations of the amended complaint and the applicable state laws[5], the Court finds that plaintiff's claims are preempted only in part.

The amended complaint alleges in support of plaintiff's claim for tortious interference

---

[5] Defendants assert that Kentucky law appears to apply to the state claims given that Libertas and Schwartz are Kentucky residents. (Doc. 11 at 11, n.2, citing cases). Plaintiff does not address whether Kentucky or Ohio law applies. The Court therefore will not resolve the issue at this point but will analyze the motion to dismiss plaintiff's state claims under both Kentucky and Ohio law, which are similar with respect to the claims in issue.

12

with contract that Cherryhill tortiously interfered with Schwartz' employment and with his obligations as an employee of Libertas (Count 2).  The elements of the tort under Kentucky law are: "(a) existence of a contract; (b) inducement of a third person's breach of the contract[,] which inducement was the proximate cause of the breach; (c) the inducement was done with malice or a lack of justification and with the intent to bring about the third-party's failure to perform the contract; and (d) resulting in special damages." *Agnew Truck Service, Inc. v. Ranger Nationwide, Inc.*, No. C 90-0034P, 1992 WL 437629, *7 (W.D. Ky. Apr. 20, 1992) (citations omitted).  The elements under Ohio law are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *PNH, Inc. v. Alfa Laval Flow, Inc.*, 958 N.E.2d 120, 128 (Ohio 2011) (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 707 N.E.2d 853, syll. ¶ 1 (Ohio 1999)).  These elements go beyond copying protected material and fundamentally change the nature of a copyright claim.  Thus, defendants have not shown plaintiff's tortious interference with contract claim is preempted.

Plaintiff alleges that Cherryhill tortiously interfered with plaintiff's employment of Schwartz and with Schwartz's obligations as an employee of Libertas by hiring him away from the company for the improper purpose of modifying the Cherryhill Software and creating derivative works.  The amended complaint alleges that Cherryhill's actions in this regard interfered with Schwartz's obligations under the Non-Disclosure Agreement, employment offer, and the Libertas Employee Manual.  (Doc. 22, ¶ 25).  Such obligations included the duty to not remove, duplicate, manipulate or communicate any Libertas property, and to not remove or make copies of any Libertas property without prior management approval.  (Doc. 22, ¶ 13).  The

13

amended complaint alleges that Schwartz breached his duties to Libertas when he reformatted the hard drive of his Libertas issued laptop, removed or destroyed final derivative works of the Cherryhill Software, and removed or destroyed property of Libertas, and when he used his home personal computer to perform Libertas work. (Doc. 22, ¶¶ 17, 19). The amended complaint further alleges that reformatting the hard drive served no purpose other than to deprive Libertas of its property, and therefore was willful and malicious. (Doc. 22, ¶ 18). These allegations are sufficient to state a claim for tortious interference with contract. Count 2 should not be dismissed.

Plaintiff alleges in Count 5 of the complaint that defendants misappropriated "Non-Cherryhill Software" which constituted trade secrets of plaintiff. (Doc. 24, ¶ 48). In contrast, plaintiff's copyright infringement claim involves the Cherryhill Software. Accordingly, because the software at issue in Count 5 is not the work that is the subject of the copyright infringement claim, defendants have not shown Count 5 is preempted.[6]

Plaintiff alleges in support of its conversion claim that Schwartz has converted Libertas' property for his own use and benefit. (Count 6). Defendants generally allege that other federal courts have held conversion claims to be preempted by the Copyright Act. (Doc. 11 at 10, citing cases).

The elements of a claim for conversion under Kentucky law are: "(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner that denied the plaintiff's rights to use and enjoy the property and that was to the

---

[6]Defendants do not address whether Count 5 fails to state a claim for misappropriation of trade secrets.

defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return that the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property." *Kentucky Assoc. of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n.12 (Ky. 2005) (citation omitted). Under Ohio law, "[c]onversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Pappas v. Ippolito,* 895 N.E.2d 610, 621 (Ohio App. 8 Dist. 2008).

Insofar as plaintiff alleges that Schwartz converted the copyrighted material to his own use, the conversion claim is not qualitatively different from the copyright infringement claim and should be dismissed as preempted. To the extent the conversion claim involves property other than the software program that is the subject of the copyright, the conversion claim differs qualitatively from the federal copyright claim and should not be dismissed as preempted.

Defendants contend that both the conversion claim and the claim for replevin (Count 7) are nonetheless untenable because there is no tangible property at issue in this case. Defendants cite only Ohio law in support of their position, asserting that copying data is insufficient to constitute "trespass to chattels" because chattels do not include data under Ohio law. (Doc. 11 at 13, citing *Green v. Green*, 221 N.E.2d 388, 394 (Ohio Prob. 1966) ("the word 'chattels' is ordinarily limited to visible, tangible, movable personable property, although it "may be used in a

broader sense"); *Universal Tube & Rollform Equipment Corp. v. YouTube, Inc.*, 504 F. Supp.2d 260 (N.D. Ohio 2007) (dismissing claim of trespass to chattels against provider of online video content)). Defendants do not cite Kentucky or Ohio law on conversion or replevin. Plaintiff has not cited any case law in support of its claims for conversion and replevin.

The amended complaint alleges that Schwartz wrongfully took possession of both Cherryhill and Non-Cherryhill Software rightfully belonging to Libertas and that he failed to return the software when Libertas made a demand for its return. (Doc. 22, ¶¶ 52-56). These allegations are sufficient to satisfy the elements of a claim for conversion. *McClendon,* 157 S.W.3d 626; *Pappas v. Ippolito,* 895 N.E.2d at 621. Defendants have not cited any authority that shows plaintiff is barred from pursuing its claim for conversion because the property at issue consists of software programs. Nor have defendants shown that plaintiff is barred from pursuing its claim for replevin of its property stored on Schwartz's personal computer (Doc. 22, ¶¶ 57-60) on this ground. *See Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp.2d 923, 934 (W.D. Ky. 2011) (citing *Williams v. Hardesty,* No. 2006-CA-000013-MR, 2007 WL 1300979 (Ky. Ct. App. 2007) (to prevail on claim of replevin, a plaintiff must show (1) that it is entitled to possession of the property; (2) that the defendant exercised unauthorized control over the property; and (3) that the defendant deprived the plaintiff of the right to possession); *Schneider v. Schneider,* 897 N.E.2d 706, 710 (Ohio App. 9 Dist. 2008) (to prevail in a replevin action under Ohio law, the plaintiff must "prove that he is entitled to possession of the property and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it]."). Thus, plaintiff's claim for conversion of the Non-Cherryhill Software and its claim for replevin relating to this software should not be dismissed.

16

Insofar as plaintiff seeks replevin of the Cherryhill Software, its replevin claim should be dismissed as preempted.

## B. Counts 3 and 4

Defendants contend that plaintiff's claims for tortious interference with a business relationship must be dismissed because plaintiff has not adequately pled malice, which is an element of these claims under Kentucky law. (Doc. 11 at 11, citing *Derby Road Building Co. v. Commonwealth,* 317 S.W.2d 891 (Ky. 1958), *ovrld. on other grounds, Foley Construction Co. v. Ward,* 375 S.W.2d 392 (Ky. 1963); *Brooks v. Patterson*, 29 S.W.2d 26 (Ky. 1930)). Defendants argue these claims must be dismissed for the additional reason that Cherryhill had a privilege to assert its own legally protected interest by hiring an at-will employee, Schwartz, from another company, Libertas, and therefore it cannot be held liable for interference. (Doc. 11 at 12, citing *Carmichael-Lynch-Nolan, Etc. v. Bennett, Etc.,* 561 S.W.2d 99, 102 (Ky. 1977) (following Restatement of Torts § 766 guidelines for tortious interference with contract rights)).

These tortious interference claims should not be dismissed on the grounds asserted by defendants. To establish tortious interference with a business relationship under Kentucky law, the plaintiff must establish six elements: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant intended to interfere; (4) the defendant's conduct actually interfered with the relationship; (5) damages to the plaintiff; and (6) the defendant had no privilege or justification to excuse its conduct. *National Information and Communications Equipment Network Inc. v. Willigan,* No. 06-28-DLB, 2007 WL 2979928, at *10 (E.D. Ky. Oct. 11, 2007) (citing *National Collegiate Athletic Association v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988); *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky.

17

1995)).  Under Ohio law, "[t]he elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Wolf v. McCullough-Hyde Mem. Hosp., Inc.*, 586 N.E.2d 1204, 1208 (Ohio App. 12 Dist. 1990).  "Actual malice" is generally not a required element of a claim for tortious interference with a business relationship. *Rahimi v. St. Elizabeth Medical Center,* No. C3-96-126, 1997 WL 33426269, at *8 (S.D. Ohio July 16, 1997) (Dlott, J.).  In any event, plaintiff has sufficiently pled malice in the absence of a privilege to act by alleging defendants acted willfully and maliciously and with no purpose other than to deprive Libertas of its property.  (Doc. 22, ¶¶ 18, 24).  *See id*. ("[M]alice as used in connection with cause of action for tortious interference with business relationship and in absence of qualified privilege "denotes an unjustified or improper interference with the contractual or business relationship.") (citing *Hoyt v. Gordon & Assocs.*, 662 N.E.2d 1088, 1092 (Ohio App. 8 Dist. 1995)).  Counts 3 and 4 for tortious interference with a business relationship therefore should not be dismissed.

### C.  Count 8

Defendants contend that plaintiff's claim for civil conspiracy must be dismissed because plaintiff has not asserted a cognizable claim for an unlawful act or an act committed pursuant to a formed conspiracy.  (Doc. 11 at 13-14).  Plaintiff contends it has properly alleged that defendants agreed to commit unlawful acts which included either the theft or "the intentional taking of Libertas' property from the computer hard drive, and then the destruction of that property so that Libertas could not have it."  (Doc. 12 at 11).

The term "conspiracy" under Kentucky law means "a corrupt or unlawful combination or

18

agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Holmes v. Couch*, No. 2007-CA-000445, 2008 WL 2468764, at * 8 (Ky. App. June 20, 2008) (citing *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)). In order to prevail on a claim of civil conspiracy under Kentucky law, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995). The elements of a civil conspiracy claim under Ohio law are: (1) a malicious combination of two or more persons, (2) resulting in injury to person or property, and (3) an unlawful act independent from the actual conspiracy. *Wagner v. Circle W. Mastiffs,* 732 F. Supp.2d 792, 808 (S.D. Ohio 2010) (citing *Berardi's Fresh Roast, Inc. v. PMD Enterprises*, No. 90822, 2008 WL 4681825, at *7 (Ohio App. Oct. 23, 2008); *Katz v. Banning*, 617 N.E.2d 729, 735 (Ohio 1992). ("conspiracy cannot be made the subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to a cause of action.")).

The amended complaint fails to state a claim for civil conspiracy under either Kentucky or Ohio law. Count 8 of the amended complaint generally alleges that the actions of defendants were "unlawful," they "caused injury" to plaintiff, and they were "committed in combination to cause injury to Libertas." (*Id.*, ¶ 62). However, the amended complaint does not allege that Schwartz and Cherryhill formed an agreement to perform any act, and although there are allegations that Schwartz and Cherryhill performed separate acts with malice (*Id.*, ¶¶ 18, 24), there is no allegation of a "malicious combination." Accordingly, plaintiff's civil conspiracy claim should be dismissed.

19

**IT IS THEREFORE RECOMMENDED**:

1.      Defendants' motion to dismiss plaintiff's copyright infringement claim under 17 U.S.C. § 411 (Count 1) should be DENIED.

2.      The Court should exercise supplemental jurisdiction over plaintiff's state law claims (Counts 2-8).

3.      Defendants' motion to dismiss should be GRANTED as to plaintiff's claim for civil conspiracy (Count 8); GRANTED in part and DENIED in part as to plaintiff's claims for conversion and replevin (Counts 6, 7); and DENIED as to plaintiff's claims for tortious interference with contract and business relationships and misappropriation of trade secrets (Counts 2-5).

Date: _5/14/2012_

Karen L. Litkovitz

United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LIBERTAS TECHNOLOGIES,
L.L.C.,
        Plaintiff

    vs

CHERRYHILL MANAGEMENT,
INC., et al.,
        Defendants

Case No. 1:10-cv-935

Dlott, J.

Litkovitz, M.J.

**REPORT AND**

**RECOMMENDATION**

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21